UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:                                    )
                                          )
DECKER COLLEGE, INC. d/b/a                )
DECKER, INC. d/b/a                        )          CASE NO. 05-61805
DECKER COLLEGE OF BUSINESS                )
                                          )
DEBTOR                                    )          CHAPTER 7
_____            )

AMENDED MOTION FOR RELIEF FROM AUTOMATIC STAY
FILED BY BENEKE WIRE COMPANY

Comes now Beneke Wire Company ("Beneke"), a creditor of the above-captioned debtor (the "Debtor"), by counsel, and hereby files its Motion for Relief from Automatic Stay (the "Motion"). In support of the Motion, Beneke provides as follows:

BACKGROUND AND JURISDICTION

1.      On or about July 23, 2004, the Debtor, as a commercial tenant, entered into a Lease Agreement ("Lease") with Beneke, as a commercial landlord, to lease certain premises consisting of 65,822 square feet of space located at 5534 National Turnpike, Louisville, Kentucky 40214 (the "Original Leased Premises"). A copy of the Lease is attached hereto as Exhibit A and incorporated herein by reference. The Lease provided, in part, that the Debtor was to pay $15,633.00 per month to Beneke on the first day of each calendar month. The term of the Lease was 60 months and commenced on October 1, 2004. (Lease ¶ 3).

2.      On or about March 15, 2005, the Debtor and Beneke agreed to an Amendment to the Lease (the "Amendment") to lease an additional 20,000 square feet of space, also located at 5534 National Turnpike, Louisville, Kentucky 40214 (the "Additional Leased Premises") (the

Original and Additional Leased Premises shall collectively be referred to hereinafter as the "Leased Premises"). The Amendment is attached hereto as Exhibit B and is incorporated herein by reference. The Amendment provided, in part, that the Debtor was to pay $4,750.00 to Beneke in additional rent. The additional rent was due on the first day of each calendar month beginning on April 1, 2005, and continued until termination of the original Lease, discussed *infra.*

3.    The Debtor failed to make proper payments pursuant to the Lease and Amendment for the months of August, September and October of 2005. As a result of these missed payments, the Debtor defaulted under the Lease and Amendment and breached the two agreements. (*See* Lease, § 18.1).

4.    By letter dated September 12, 2005 (the "Lease Termination Letter"), Beneke provided written notice to the Debtor via certified mail advising that the Lease and Amendment were terminated due to the Debtor's default, and that Beneke was to assume control of the Leased Premises. A copy of the Lease Termination Letter is attached hereto as Exhibit C and is incorporated herein by reference.

5.    Notwithstanding the Lease Termination Letter, the Debtor never left or relinquished control of the Leased Premises to Beneke, nor did it remove the fixtures, furniture and other personal property ("Holdover Property") it placed on the Leased Premises. Consequently, on October 18, 2005, Beneke filed a Petition for Writ and Forcible Entry and Detainer (the "Eviction Petition") in order to evict the Debtor from the Leased Premises. A copy of the Eviction Petition is attached hereto as Exhibit D and is incorporated herein by reference.

6.    Also October 18, 2005, Beneke recorded a Statement of Lien for Rent (the "Lien Statement") with the County Clerk for Jefferson County, Kentucky pursuant to KRS 383.070, *et*

2

*seq.* The Lien Statement is recorded in Miscellaneous Lien Book 133, page 696. A copy of the Lien Statement is attached hereto as Exhibit E and is incorporated herein by reference. A copy of the recorded Lien Statement was sent by Beneke to the Debtor via certified mail on the day of its recording. Pursuant to KRS 383.070, *et seq.,* Beneke maintains a valid lien (the "Lien") on the Holdover Property. Beneke's Lien claim as of the date of this Motion is approximately $64,206.45.

7.      On October 19, 2005, Beneke filed a complaint (the "Complaint") in Jefferson Circuit Court seeking, *inter alia*, breach of contract damages and enforcement of its Lien, which resulted in the initiation of civil action 05-CI-09147 *Beneke Wire Company v. Decker, Inc.* (the "Civil Action"). A copy of the Complaint is attached hereto as Exhibit F and is incorporated herein by reference.

8.      On October 24, 2005, certain creditors of the Debtor (the "Petitioning Creditors") filed an involuntary chapter 7 petition against the Debtor, which initiated the above-styled bankruptcy proceeding. On November 2, 2005, the Debtor, by counsel, filed its Consent to Entry of Order for Relief Under Chapter 7 of the Bankruptcy Code (Doc. No. 8). On November 4, 2005, the Court entered an Order for Relief (Doc. No. 10), by which, *inter alia,* the Court appointed an interim trustee to this proceeding.

## REQUEST AND BASIS FOR RELIEF

9.      As a result of this bankruptcy proceeding, § 362(a) of the Bankruptcy Code affords the Debtor with the protections of the automatic stay, which prevents Beneke from proceeding with a hearing on its Eviction Petition and regaining full control and use of the Leased Premises. *See* 11 U.S.C. § 362(a).

10. Section 362(d) of the Code, however, allows for the automatic stay to be terminated, providing in relevant part that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if --
>
> (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. 362(d)(1) and (2).

11. As explained below, the automatic stay in this case should be terminated in favor of Beneke pursuant to § 362(d)(1) and (d)(2) of the Bankruptcy Code. Specifically, the automatic stay should be terminated because (a) the Debtor lacks equity in the Leased Premises and the Leased Premises is not necessary for the Debtor to reorganize, and (b) cause exists for allowing such termination.

**The Debtor does not have equity in the Leased Premises and the Leased Premises are not necessary for an effective reorganization.**

12. Beneke should be granted stay relief under § 362(d)(2) of the Bankruptcy Code in this case because the Debtor has no equity or interest in the Leased Premises. The Leased Premises is owned by the Debtor, and the Lease and Amendment (collectively hereinafter referred to as the "Terminated Amended Lease") were terminated by Beneke on September 12, 2005.

13.     Further, the Debtor's use and possession of the Leased Premises is not "necessary to an effective reorganization." *See* 11 U.S.C. § 362(d)(2)(B).   In this case, there is no reasonable prospect of the Debtor reorganizing because it has shut down its business, which is now under the control of a bankruptcy trustee who will oversee the bankruptcy estate's administration through a chapter 7 liquidation.

**Cause exists for terminating the automatic stay under § 362(d)(1) of the Bankruptcy Code.**

14.     Under § 362(d)(1) of the Bankruptcy Code, the automatic stay may be terminated or modified for cause, including lack of adequate protection.   In this case, numerous causes for terminating the automatic stay exist, such as:

- The Debtor's pre-petition breach of the Terminated Lease[1];

- The Debtor's improper control and occupation the Leased Premises without any legal or contractual authority; and

- The Debtor's failure make payments in the past for use of the Lease Premises and its inability to generate revenue going forward post-petition indicate that the Debtor's estate will not have adequate funds to pay for post-petition use the Leased Premises.

The preceding facts and circumstances establish sufficient cause for this Court to terminate the automatic stay as it applies to Beneke.

**Beneke's Request for Relief is Limited**.

15.     Beneke's request for termination of the automatic stay is limited and not overreaching.   By this Motion, Beneke is merely asking the Court to modify or terminate the automatic stay for the limited purpose of authorizing it to exercise all legal and equitable actions and remedies to evict the Debtor and regain complete control of the Leased Premises that Beneke

---

[1] It is worth reiterating that the Terminated Lease for the Leased Premises was terminated prepetition.  As such, there are no "Section 365 concerns" relating to rejection, assumption or assumption and assignment that need to be addressed or considered by this Court.

owns.  Beneke is only seeking relief from the automatic stay to proceed with the Eviction Petition and any eviction portion of the Civil Action, and is not seeking stay relief to liquidate its claim or enforce its Lien rights at this time.[2]

16.     Beneke is being deprived of the possession, use and control of the Leased Premises without compensation, as the Leased Premises languishes in bankruptcy.  In order to correct this inequitable situation, the Court should terminate the automatic stay for the limited purpose of allowing Beneke to continue and complete the eviction process against the Debtor and to regain immediate possession, use and control of the Leased Premises.

17.     Further, granting Beneke stay relief should not adversely impact the Debtor's bankruptcy estate. All of the Debtor's personal property, including the Holdover Property, is subject to liens and security interests that greatly limit, if not totally eliminate, this property's value to the Debtor's bankruptcy estate.

## CONCLUSION

18.     In summary, the automatic stay in this case should be terminated in favor of Beneke under § 362(d)(1) and (d)(2) of the Bankruptcy Code because cause exists for allowing such termination, and the Debtor lacks equity in the Leased Premises and the Leased Premises are not necessary for the Debtor to effectively reorganize.

WHEREFORE, Beneke hereby requests that the Court enter an order terminating the automatic stay for the purposes of completing the eviction process against the Debtor and

---

[2] Beneke maintains and reserves its right to seek stay relief from this Court at a later date for the any purpose, including but not limited to proceeding with the Civil Action to liquidate its claim against the Debtor or to enforce its Lien rights.  Nothing herein shall be construed as a waiver of any of the rights that Beneke maintains as a creditor or party in interest to this bankruptcy.

regaining full and complete possession, use and control of the Leased Premises, and granting any additional relief that the Court finds just and proper.

Respectfully submitted,

*/s/ Andrew D. Stosberg*

C.R. "Chip" Bowles, Jr.
Andrew D. Stosberg
GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone (502) 587-3658
Facsimile (502) 540-2122
ATTORNEY FOR CREDITOR,
BENEKE WIRE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing motion for relief from automatic stay was mailed first class postage prepaid or was e-mailed via the Court's CM/ECF system on this 17th day of November, 2005 to the following:

Dean A. Langdon
langdonbk@wwwatty.com
ATTORNEY FOR THE DEBTOR


Stuart E. Alexander, III
salexander@tilfordlaw.com
ATTORNEY FOR THE PETITIONING
CREDITORS

Roberts W. Keats
rkeats@epitrustee.com
TRUSTEE

United States Trustee's Office
Ustpregion08.lo.ecf@usdoj.gov


/s/ *Andrew D. Stosberg*
Attorney for Beneke Wire Company

## EXHIBIT A

(Lease)

# _LEASE_

*THIS IS A LEASE entered into on* __July 23, 2004_____ *, 2004, between*

> *Beneke Wire Company, a Kentucky Corporation ("LANDLORD")*
> 5540 National Turnpike
> Louisville, KY 40214

> *AND*

> *Decker College, Inc., a Kentucky Corporation ("TENANT")*
> *5534 National Turnpike*
> Louisville, KY 40214

## 1.   FUNDAMENTAL EXHIBITS TO LEASE

The exhibits listed below and attached to this Lease are incorporated herein by this reference:

| | |
|---|---|
| EXHIBIT A | Legal description of the real estate known as: <br> 5534 National Turnpike, Louisville, KY 40214 |
| EXHIBIT B | Drawing showing outline of Tenant's Premises located within the Building |
| EXHIBIT C | Description of Landlord's work and Tenant's work |
| EXHIBIT D | Rules and Regulations |

ST. ... KEITH ... ....
TONNA ... ........
JEFFERSON CIR/DIST CT

2005 OCT 19 P 5: 46

FILED

## 2.   GRANT, PREMISES AND TERM

### 2 1 - Grant and Premises

Landlord leases to Tenant and Tenant leases from Landlord upon the terms and conditions set forth herein the described space consisting of a portion of the building (the "Building") designated as 5534 National Turnpike, Louisville, KY  40214 and outlined in red on Exhibit B the ("Premises"), containing approximately 65,822 square feet "Tenant's pro rata share" represents 32% of the total gross (204,000 square feet)

### 2.2 – Additional Areas

In addition to the Premises, Tenant shall have the non-exclusive use, during the Lease Term, of the common facilities designated from time to time by Landlord, subject to the Rules and Regulations attached as Exhibit D and to such other rules and regulations as Landlord may from time to time impose, including the following common facilities:  the parking spaces, sidewalks, driveways, parking facilities and any and all finished or improved areas outside all buildings (present or future) in the Building.  Landlord reserves the right to make changes or revisions in the site plan, reflected by Exhibit B or any other site plan, including, without limitation, any designated parking spaces, sidewalks, driveways, parking facilities, malls and finished or improved areas   Landlord further reserves the right to change the site, location, nature and use of common facilities to construct buildings in a different location than shown on Exhibit B or any other site plan and to construct any buildings shown on Exhibit B other than the building in which the Premises are located   Landlord may at any time close temporarily any common areas to make repairs or changes therein or to effect construction, repairs or changes within the Building to prevent the acquisition of public rights in such areas and to discourage non-customer parking; and may do such other acts in and to the common areas as in its judgment may be desirable to improved the convenience thereof

### 2 3 - Roof and Walls

Landlord shall have the exclusive right to use all or any part of the roof, side and rear walls of the Premises for any purpose, including but not limited to erecting signs or other structures on or over all or any part of the same, erecting scaffolds and other aids to the construction and installation of the same, and installing, maintaining, using, repairing and replacing pipes, ducts, conduits and wires leading through to or from the Premises and serving other parts of the Building in locations which do not materially interfere with Tenant's use of the Premises   Tenant shall have no right whatsoever in the exterior or exterior walls or the roof of the Premises except as otherwise provided herein

### 2 4 - Term

The term of this Lease (The "Lease Term") shall be for a period of **60 months** from the date of commencement of the Lease. The Lease Term shall commence on the earlier of October 1, **2004** or (b) upon substantial completion of tenant improvements. WHEN THE COMMENCEMENT DATE OF THE LEASE TERM HAS BEEN SO ESTABLISHED LANDLORD AND TENANT SHALL EXECUTE, ACKNOWLEDGE AND DELIVER A WRITTEN STATEMENT SPECIFYING THE DATE OF THE COMMENCEMENT AND TERMINATION OF THE LEASE TERM Tenant shall have the right, immediately following full execution of the lease, to enter the Premises to begin Tenant Improvements work Tenant agrees to bond by paragraph 11. Indemnity and Tenant Insurance and paragraph 12 Waiver of Subrogation upon entry of Premises In the event of Landlord's inability to deliver possession of the Premises upon the Commencement Date, Landlord shall not be liable for any damage caused thereby, nor shall this Lease become void or voidable, nor shall the Lease Term be extended, but in such event Tenant shall not be liable for any rent until such time as Landlord delivers possession. If Landlord permits Tenant to enter into possession of the Premises prior to the commencement date, all of the terms and conditions of the Lease shall apply to such prior period.

### 2 5 Ready for Occupancy

Outline specifications describing the improvements to be provided and installed by Landlord at its expense and the improvements to be provided and installed by Landlord and/or Tenant at Tenant's expense have been agreed to by the Landlord and Tenant and are attached hereto as a part hereof and marked "Exhibit C". The term "ready for occupancy" as used herein shall mean the first day on which the Landlord shall have substantially completed all the work to be performed by Landlord in accordance with Exhibit C attached hereto, including any of Tenant's work which, pursuant to Exhibit C, is to be performed by Landlord at Tenant's expense.

### 3 RENT

Tenant shall pay to Landlord without notice or demand and without setoff or deduction for any reason at Landlord's office at or at such other place as Landlord may from time to time designate, as base rental for the Premises

(a) Base rental in the sum of **$187,596.00** per annum payable in twelve (12) equal monthly installments of **$15,633.00** in advance on the first day of each calendar month during the Lease Term hereof commencing on the Commencement Date The Tenant shall pay to Landlord upon execution of this Lease the sum of **$15,633.00** as payment for first months rent. Rent for partial months shall be prorated on the basis of the number of days in the month. The first monthly payment of base rent shall include any prorated rental for the period from the date of commencement of the Lease Term to the first full calendar month in the Lease Term

(b) Landlord agrees to give Tenant four (4) months free rent thereby rent shall commence on February 1, 2005

**Late Payment Charge** - *A late payment charge of five percent (5%) of guaranteed monthly rental shall be due and payable with rent received after the tenth (10th) calendar day of the month.*

## 4. SECURITY DEPOSIT

Tenant shall pay to Landlord upon execution of this Lease the sum of **$15,633.00** as security for the performance of Tenant's obligations hereunder, including the payment of all rentals. In the event of a default by Tenant, Landlord at its option may apply such part of the deposit as may be necessary to cure the default, and if Landlord does so, Tenant shall, upon demand, redeposit with Landlord an amount equal to that so applied so that Landlord will have the full security deposit on hand at all times during the term of this Lease. Upon the termination of this Lease, provided Tenant is not in default hereunder, Landlord shall refund to Tenant, within thirty (30) days after lease expiration, any then remaining balance of the deposit, without interest. In the event of a sale or leasing of the land and Building of which the Premises form a part, Landlord shall have the right to transfer the deposit to the vendee or lessee and Landlord shall thereupon be released by Tenant from all liability for the return of the deposit; and Tenant agrees to look to the new Landlord solely for the return of the deposit; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the deposit of a new Landlord.

## 5. USE AND OCCUPANCY

(a) The Premises are to be used solely for the purposes of conducting therein: **Educational Institution** (the "Permitted Use") and for no other business or purpose without the prior written consent of Landlord. Tenant shall not do or permit to be done in or about the Premises anything which is illegal or unlawful or which is of a hazardous or dangerous nature, or which is noxious or offensive to other tenants in the Building or to Landlord, or which will increase the rates of insurance carried by Landlord. Tenant shall obtain all permits, licenses, certificates or other authorization and any renewals, extensions or continuances of the same required in connection with the lawful and proper use of the Premises and shall pay when due all taxes upon its merchandise, stock, fixtures, equipment and leasehold improvements in the Premises. Neither a failure on the part of Tenant to procure such permit, license, certificate or other authorization, nor the revocation of the same, shall in any way affect the liability of Tenant for payment of rent herein reserved or the performance or observance of any of the covenants or conditions herein contained on Tenant's part to be performed and observed. Tenant shall (and shall cause it employees) to observe the Rules and Regulations attached as Exhibit D or such other reasonable rules and regulations applicable to the Building as the same may be imposed by Landlord from time to time; and Tenant shall comply with all governmental laws and ordinances and all regulations applicable to the use and occupancy of the Building. Without limiting the generality of the foregoing, Tenant shall not conduct any sidewalk sales nor display anything outside of the Premises nor operate any loud speakers without the specific written consent of Landlord.

(b) Tenant shall pay before delinquency any and all taxes and assessments, and licenses, sales, business, occupational or other taxes, fees or charges levied, assessed or imposed upon its business operations, upon it trade fixtures, leasehold improvements, merchandise and other personal property in on or upon the Premises.

(c) In the event any taxes, fees or charges referred to in the preceding subparagraph (b) and/or subparagraph (d) shall be assessed, levied or imposed upon or with the business or property of Landlord, such reasonable assessment, fees or charges shall be paid by Tenant to Landlord within thirty (30) days after Landlord's request for such payment

(d) Landlord agrees to pay all real estate property taxes assessed against the property and building insurance for the calendar year of 2004   Tenant shall pay for its proportionate share of any increases over the 2004 base year amount

## 6. REPAIRS

(a) Landlord shall keep or cause to be kept in as good repair as same are in when possession hereunder is given to Tenant: the foundations, the roof and the structural soundness of the floors, and the exterior walls (excluding the interior surface of the exterior walls and excluding the exterior and interior portions of all windows, doors, plate glass and showcase); the exterior water, sewage and gas and electrical services up to the point of entry to the Premises, the common areas in the Building, including, without limitations, the sidewalks and parking area; and Landlord shall make all repairs and restorations made necessary by fire or other peril covered by the standard extended coverage endorsement on fire insurance policies; provided, however, that Tenant shall reimburse Landlord upon demand for the reasonable cost of repairing any damage to the Premises, the Building or the common areas caused by the negligence or the deliberate acts of Tenant, its employees, agents or invitees

(b) Tenant shall keep or cause to be kept in good repair the interior of the Premises, including the interior surface of the exterior walls and the exterior and interior portions of all windows, doors, plate glass and showcases, and all plumbing, lighting fixtures, pipes and equipment, floor coverings, ceilings, walls and plasterings; and Tenant agrees to make all repairs necessitated by the negligence or deliberate act of Tenant, its employees, agents or invitees *The Premises include a heating and air conditioning system. Tenant will make all repairs and replacements, including normal maintenance, on all parts of the system without limitation, except as provided in Exhibit C.* To that end, Tenant will contract for a service maintenance agreement reasonably satisfactory to Landlord  Tenant will return the heating and air conditioning unit to Landlord in good condition, at the end of the Lease Term, and any renewals thereof normal wear and tear excepted. *Tenant will make all other repairs not specifically required to be made by Landlord under the provisions of the foregoing paragraph.*
## 7. UTILITIES

Tenant shall pay for all water, gas, electricity, heat, light, power, telephone, sewer, sprinkler services, refuse and trash collection, and other utilities and services used on the Premises except for those specifically provided by Landlord, all maintenance charges for utilities. Tenant shall pay its share of all charges for jointly metered utilities based upon consumption, as reasonably determined by Landlord.

## 8. ACCESS

Landlord has the right to enter the Premises periodically and shall have access to the Premises at reasonable hours for inspection or in connection with the improvement or repair of and the providing of utilities and other services to the Premises or to other buildings or common areas in the Building

## 9. ALTERATIONS ON PREMISES; SIGNS

Tenant shall not make any alterations, additions or improvements to the exterior of the Premises without first obtaining Landlord's prior written consent which consent shall not be unreasonably withheld; provided, however, Landlord's prior written consent will not be required for nonstructural, interior alterations to the Premises, the cost of which are less than $10,000 in the aggregate for any year of the Lease Term. Tenant shall not place, direct, maintain or paint any signs on the Premises except such signs as are in accordance with plans which have been submitted to and approved in writing by Landlord and which comply with the Louisville Metro Land Development Code. Landlord may make any repairs, alterations or improvement which Landlord may deem necessary for the preservation, safety or improvement of the Premises of the Building; provided, however, that in so doing Landlord shall not unreasonably interfere with Tenant's use and improvements made by Tenant shall become the property of Landlord upon the making thereof and shall be surrendered to Landlord upon the expiration of this Lease. Any damage to the Premises in connection with the making of alterations, additions and improvement by Tenant or in connection with the placement, direction maintenance painting or removal of any signs on the Premises shall be paid by Tenant

## 10. DAMAGE OR DESTRUCTION

10 1 - In the event the Premises are damaged or destroyed by fire, earthquake or any other casualty to such an extent as to render the same untenantable in whole or in substantial part, Tenant shall give Landlord immediate notice of the occurrence of any such casualty. Unless Landlord, within sixty (60) days after receipt of such notice, notifies Tenant of its election to repair or to restore the Premises, this Lease shall terminate at the end of such sixty (60) day period and if Tenant shall not be in default under this lease, then Tenant's liability for rent shall cease as of the day following the casualty and any rent paid by Tenant in advance and not yet earned as of the date of termination shall be refunded to Tenant  If Landlord elects to repair or restore the Premises, the rent shall be abated during the period from the day following the

casualty until completion of the repair or restoration in the same proportion as the untenantable portion of the Premises bears to the former rentable area thereof

10 2 - In the event the Premises are damaged by fire, earthquake or any other casualty to such an extent that the Premises shall be rendered untenantable in part (but less than a substantial part), then Landlord, to the extent of insurance proceeds, shall promptly at its own expense repair and restore the Premises; provided, however, nothing herein shall obligate Landlord to repair or restore the Premises if the casualty occurs within twelve (12) months of the end of the Lease Term. The rent shall be abated proportionately as to the portion of the Premises rendered untenantable from the day following the casualty until completion of the repair and restoration

## 11.  INDEMNITY AND TENANT INSURANCE

11.1- Tenant shall indemnify and hold Landlord harmless from all loss, damage, liability or expense resulting from any injury to or death of any person, or any loss of or damage to any property, caused by or resulting from any act or omission of or any officer, agent, employee, guest, invitee or visitor of Tenant in or about the Premises or the Building, but the foregoing provision shall not be construed to make Tenant responsible for injuries to third parties or damages to the Premises caused by the negligence of Landlord or any agent or employee of Landlord. Landlord shall not be liable for any injury to or the death of any person, or any loss of or damage to property, sustained by Tenant, or by any other person(s) whatsoever, which may be caused by the Building, or the Premises or any appurtenances thereto or thereof being out of repair, or by the bursting or leakage of any water, gas, sewer or steam pipes, or by any act or negligence of any Tenant or occupant of the Building, or of any other person, or by any other cause of whatsoever nature, unless caused by the negligence of Landlord or its officers, agents or employees.

*11.2 - Tenant covenants and agrees that it will carry and maintain during the Lease Term, at Tenant's sole cost and expense, combined bodily injury and property damage liability insurance within limits of not less than Two Million Dollars ($2,000,000.00) per occurrence insuring against any and all liability of the insured with respect to the Premises arising out of all maintenance, use or occupancy thereof. Such bodily injury liability insurance shall specifically insure the performance by Tenant of the indemnity agreement as to liability for injury to or death of persons and loss of or damage to property contained in paragraph 10.1 of this Lease, and shall name Landlord as additional insured. Such insurance may be furnished by Tenant as part of any blanket policy carried by Tenant or may be a separate policy These limits shall be periodically increased by Tenant in accordance with industry standards and Landlord's umbrella requirements.*

11.3 - *Certificates of such policies shall be delivered to Landlord within ten (10) days after delivery of possession of the Premises to Tenant and thereafter within thirty (30) days prior to the expiration of the term of each such policy.* Such policies shall contain a provision that Landlord, although named as an insured, shall nevertheless be entitled to recovery thereunder

for any loss occasioned to it, its servants, agents and employees, by reason of the negligence of Tenant. Renewal or additional policies shall be procured and maintained by Tenant in like manner and to like extent. All policies of insurance must contain a provision that the insuring company will give to Landlord thirty (30) days notice in writing in advance of any cancellation or lapse of the policies or of the effective date of any reduction in the amounts of insurance.

11.4 - Tenant covenants and agrees that it will carry and maintain during the Lease Term, at Tenant's sole cost and expense, casualty insurance covering the damage by fire and the usual extended coverage clauses, insurance on the glass windows and doors located in the area designated on Exhibit B, and also including theft and vandalism coverage insuring Tenant's fixtures and personal property to the extent of the full insurable value thereof. Such insurance may be furnished by Tenant as part of any blanket policy carried by Tenant or may be a separate policy. Certificates of such policies shall be delivered to Landlord within ten (10) days after delivery of possession of the Premises to the Tenant and thereafter within thirty (30) days prior to the expiration of the term of each such policy.

*11.5 - Landlord shall keep in force and effect a policy of public liability insurance and property damage insurance with respect to the Common Areas in which the limits of public liability shall not be less than $2,000,000.00 per occurrence, and in which the limits of property damage liability shall not be less than Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00).* In addition, Landlord shall carry sufficient insurance on the Building to enable Landlord to rebuild the same in the event of a fire or other casualty. Such insurance may be furnished by landlord as part of any blanket policy carried by it or under any separate policy.

## 12. WAIVER OF SUBROGATION

Landlord and Tenant each releases and relieves the other and on behalf of its insurers waives its entire right or recovery against the other for loss or damage arising out of or incident to the perils of fire, explosion, or any other perils generally described in "extended coverage" insurance endorsements used in Louisville, Kentucky, which occur in, on or about the Building and/or the Premises, whether due to the negligence of such other party, its agents or employees, or otherwise.

## 13. LIENS

Tenant will keep the Premises and/or the Building free and clear of all mechanics' or materialmens' liens and other liens on account of work done for or by Tenant or persons claiming under it. Should any such lien be filed against the Premises and/or the Building, Tenant shall cause the lien to be paid or bonded off and released of record, and Tenant will indemnify and hold Landlord harmless in connection therewith.

## 14. ASSIGNMENT, SUBLETTING, MORTGAGING

Tenant shall not voluntarily, involuntarily or by operation of law assign, transfer, mortgage or otherwise encumber all or any part thereof without first obtaining in each and every instance Landlord's prior written consent, and any attempt to assign, transfer, mortgage, encumber or sublet without Landlord's written consent shall be null and void; and if any such assignment, transfer, mortgage or encumbrance is made with the written consent of the Landlord, Tenant shall nevertheless remain liable to Landlord for payment of rent according to the terms hereof and for the due performance of all the terms, covenants and conditions of this Lease   If Tenant is a corporation, then any transfer of this Lease by merger, consolidation or liquidation or any change in the ownership of, or power to vote the majority of its outstanding voting stock shall constitute an assignment for the purpose of this paragraph   If written consent is once given by Landlord to any such assignment or subletting, such consent shall not operate as a waiver of the necessity for obtaining Landlord's written consent to any subsequent assignment or subletting Landlord's consent will not be unreasonably withheld

## 15.  PRIORITY OF LEASE

This Lease shall be subordinate to any and all mortgages and other security instruments now existing, or which may hereafter be made covering the Building and/or the real property underlying the same or any portion or portions thereof, and for the full amount of all advances made thereunder (without regard to the time or character of such advances) together with interest thereon, and subject to all the terms and provisions thereof and to any renewals, extensions, modifications and consolidations thereof; and Tenant covenants to make, execute, acknowledge and deliver upon request any and all documents or instruments demanded by Landlord which are or may be necessary or proper for more fully and certainly assuring the subordination of this Lease to any such mortgages or other security instruments; provided, however, that any person or persons purchasing or otherwise acquiring any interest at any sale and/or proceedings under such mortgages or other security instruments may elect to continue this Lease in full force and effect in the same manner, and with like effect as if such person or persons had been named Landlord herein and in the event of such election, this Lease shall continue in full force and effect as aforesaid, and Tenant hereby attorns and agrees to attorn to such person or persons   If required by any first mortgagee, Tenant shall execute an agreement that this Lease will be subordinate to such first mortgage or if required by any first mortgagee, Tenant shall execute a separate subordination, attornment and non-disturbance agreement   If Tenant fails to execute such agreement within thirty (30) days after being requested in writing by Landlord to do so than Tenant hereby appoints Landlord the attorney-in-fact of Tenant, irrevocable to execute and deliver any document provided for within this paragraph, for and in the name of Tenant  So long as Tenant shall not be in default under this Lease, its right of possession and enjoyment of the Premises shall be and remain undisturbed and unaffected and any subordination agreement executed by Landlord shall contain language specifically so providing

## 16.  ESTOPPEL CERTIFICATE

Tenant shall at any time and from time to time execute, acknowledge and deliver to Landlord a statement in writing certifying: (a) that this Lease is unmodified and in full force and effect (or if there has been any modification hereof that the same is in full force and effect as modified and stating the nature of the modification or modifications); (b) that to the best of its knowledge Landlord is not in default under this Lease (or if any such default exists the specific nature and extent thereof); and (c) the date to which rent and other charges have been paid in advance, if any.

## 17. FIXTURE AND PERSONAL PROPERTY; SURRENDER

17.1 - Upon the termination of this Lease, Tenant shall surrender to Landlord the Premises (including, without limitation, all buildings, apparatus and fixtures, except trade fixtures and furniture, installed by Tenant, then upon the Premises) in good condition and repair, normal wear and tear and damage by casualty not caused by Tenant or its agents or employees excepted, and all alterations, improvements, additions, machinery and equipment which may be made or installed from time to time by either party hereto, in, upon or about the Premises (except trade fixtures and furniture installed by Tenant) shall be the property of Landlord, and upon any such termination, shall be surrendered to Landlord by Tenant without any injury, damage or disturbance thereto or payment therefore. The property surrendered to Landlord shall include, but not be limited to, all lighting fixtures and fluorescent tubes and bulbs and all partitions (whether removable or otherwise).

17.2 - Trade fixtures, furniture and other personal property installed or placed in the Premises at the cost of the Tenant shall be the property of Tenant unless otherwise specified in this Lease and Tenant shall remove the same prior to the termination of this Lease. Tenant shall at its own cost and expense completely repair any and all damage to the Premises resulting from or caused by such removal. If Tenant fails to remove all or any of such property, Landlord may, at Landlord's option retain all or any of such property and title thereto shall thereupon vest in Landlord, or Landlord may remove from the Premises and dispose of in any manner all or any of such property, in which later event Tenant shall, upon demand, pay to Landlord the actual expense of such removal and disposition and the cost of repair of any and all damage to the Premises resulting from or caused by such removal.

## 18. DEFAULT AND REMEDY

18.1 - If at any time Tenant shall fail to pay rents due under this Lease for ten (10) days after the due date thereof, or fail to remedy any default with respect to any of the other provisions, covenants or conditions of this Lease to be kept or performed by Tenant within thirty (30) days after notice, then Landlord shall have all such rights and remedies as are provided by law in respect to such default, including, at Landlord's election, the right to terminate this Lease;

provided, however, that Tenant's obligation and liability to make good any damages and deficiencies from any reletting shall survive such termination of this Lease.

18.2 - Landlord shall in no event be in default in the performance of any of its obligations in this Lease contained unless and until Landlord shall have failed to perform such obligation within thirty (30) days (or such additional time as is reasonably required to correct any such default) after notice by Tenant to Landlord properly specifying wherein Landlord has failed to perform any such obligation.

## 19. NON-WAIVER OF DEFAULTS

No waiver of any default by Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver, and that only for the time to the extent therein stated. The acceptance by Landlord of rent with knowledge of the breach of any of the covenants, of this Lease by Tenant shall not be deemed a waiver of any such. One or more waivers of any breach of any covenant, term or condition of this Lease shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

## 20. HOLD OVER TENANCY

If, without the execution of a new lease or written extension and with the consent of Landlord, Tenant hold's over past the expiration of the Lease Term or any extensions or renewals hereof, Tenant shall be deemed to be occupying the Premises as a Tenant from month-to-month. During such tenancy, Tenant agrees to pay to Landlord base rental in an amount equal to 150% of the base rental in effect at the time of such termination, and to be bound by all of the terms, covenants, and conditions as herein specified as far as applicable. Provided, however, that if Tenant fails to surrender the Premises upon the termination of this Lease, in addition to any other liabilities to Landlord arising therefrom, Tenant shall indemnify and hold Landlord harmless from loss or liability resulting from such failure, including any claims made by any succeeding Tenant founded on such failure.

## 21. CONDEMNATION

If the whole or any part of the Premises shall be taken under the power of eminent domain, then this Lease shall terminate as to the part taken on the day when Tenant is required to yield possession thereof, and Landlord, to the extent of the condemnation award, shall make such repairs and alterations as may be necessary in order to restore the part not taken to useful condition. The minimum rental and additional rent shall be reduced proportionately as to the part of the Premises taken, the reduction to be effective on the date that Tenant is required to yield

possession. If the amount of the Premises so taken is such as to impair substantially the usefulness of the Premises for the purposes for which the same are hereby leased, then either party shall have the option to terminate this Lease as of the date when Tenant is required to yield possession. All compensation awarded for such taking of the fee and the leasehold shall belong to and be the property of Landlord; provided, however, that Landlord shall not be entitled to any portion of any separate award made to Tenant for the cost of removal of stock and fixtures

## 22. NOTICES

Whenever in this Lease it shall be required or permitted that notice, approval, advice, consent or demand be given or served by either party to this Lease to or on the other, such notice of demand shall not be deemed to have been duly given or served unless in writing and forwarded by certified or registered mail to the following addresses (or such other address as may be given by one part to the other pursuant to this paragraph 23):

> *To Landlord*: Beneke Wire Company
> Steve Beneke
> 5540 National Turnpike
> Louisville, KY 40214
>
> *To Tenant*  Decker College, Inc.
> Leo Bogard
> 5534 National Turnpike
> Louisville, KY 40214

## 23. MISCELLANEOUS PROVISIONS

23 1 - The term "Landlord" as used in this Lease so far as covenants or obligations on the part of Landlord are concerned shall be limited to mean and include only the owner at the time in question of the Premises and in the event of any transfer or transfers of the title to the Premises, Landlord herein named (and in case of any subsequent transfers or conveyances, the then Landlord) shall be automatically freed and relieved from and after the date of such transfer or conveyance of all liabilities as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed

23 2 - The captions of the paragraphs in this Lease are for convenience only and shall not be considered or referred to in resolving questions or interpretations or construction.

23.3 - The terms "Landlord" and "Tenant" wherever used herein shall be applicable to one or more persons, as the case may be, and the singular shall include the plural, and the neuter shall include the masculine and feminine, and if there be more than one, the obligations hereof shall be joint and several

23 4 - Both the word "person" and the word "persons" wherever used in this Lease shall include individuals, partnerships, firms, associations and corporations or any other form of business entity  In the event that two or more individuals, corporations, partnerships or other business associations (or any combination of two or more thereof) shall sign this Lease as Tenant, the liability of each such individual, corporations, partnership or other business association to pay rent and perform all other obligations hereunder shall be deemed to be joint and several.  In like manner, in the event that Tenant named in this Lease shall be partnership or other business association the members of which are, by business association the members of which are, by virtue of statute or general law, subject to personal liability, then in that event, the liability of each such member shall be deemed joint and several.

23.5 - The various rights, options, elections, powers and remedies contained in this Lease shall be construed as cumulative and not one of them shall be exclusive of any of the others, or of any other legal or equitable remedy which either party might otherwise have in the event of breach or default in the terms hereof, and the exercise of one right or remedy by such party shall not impair its right or any other right or remedy until all obligations upon the other party have been fully performed.

23 6 - Time is of the essence with respect to the performance of each of the covenants and agreements under this Lease

23.7 - Each and all of the provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and, except as set forth in subparagraph 25 1 of this paragraph and as otherwise specifically provided elsewhere in this Lease, their respective heirs, executors, administrators, successors and assigns, subject at all times, nevertheless, to all agreements and restrictions contained elsewhere in this Lease with respect to the assignment, transfer, encumbering or subletting of all or any part of Tenant's interest in this Lease.

23.8 - This Lease shall be interpreted in accordance with the laws of the Commonwealth of Kentucky

23.9 - This Lease contains all covenants and agreements between Landlord and Tenant relating in any manner to the rental, use and occupancy of the Premises and Tenant's licensed use of the Building and the other matters set forth in this Lease   No prior agreement or understanding pertaining to the same shall be valid or of any force or effect, and the covenants and agreements of this Lease cannot be altered, changed, modified or added to except in writing signed by Landlord and Tenant   No representations, inducement, understanding or anything of any nature whatsoever made, stated or represented on Landlord's behalf, either orally or in writing (except this Lease), has induced Tenant to enter into this Lease

23.10 - Any provision or provisions of this lease which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provisions hereof, and the remaining provisions hereof shall nevertheless remain in full force and effect.

23.11 - Except with respect to those conditions, covenants and agreements of this Lease which by their nature could only be applicable after the commencement of, during or throughout the term of this Lease, all of the other conditions, covenants and agreements of this Lease shall be deemed to be effective as of the date of execution of this Lease.

23.12 - Tenant represents and warrants to Landlord that it has not engaged any broker, finder or other person who would be entitled to any commission or fee in respect of the negotiation, execution or delivery of this Lease, except the Fortis Group who shall indemnify Landlord against loss, cost, liability or expense incurred by Landlord as a result of any claim asserted by any broker, finder or other person on the basis of any arrangements or agreements made or alleged to have been made by or on behalf of Tenant.

23.13 - Nothing contained herein will be deemed or construed by the parties hereto, nor by any third part, as creating the relationship of principal and agent or of partnership or of joint venture between the parties hereto, it being understood and agreed that neither the method or computation of rent, nor any other provision contained herein nor any acts of the parties herein, shall be deemed to create any relationship between the parties hereto other than the relationship of Landlord and Tenant.

23.14 - Tenant agrees that it will not record this Lease. Both parties shall, upon request of either, execute, acknowledge and deliver a notice of Lease in statutory, or short form, for recording

23.15 - The submission of this Lease by Landlord to Tenant, whether in blank form or with one or more blanks completed and whether or not all exhibits referred to herein are attached, for examination by Tenant shall not constitute a reservation of, or an option for, the Premises or any other space within the Building and shall vest no rights in Tenant. This Lease and all exhibits incorporated herein shall become binding on the Landlord only upon execution and delivery thereof by *Steve Beneke of Beneke Wire Company.* Until such execution and delivery, Tenant shall have no rights under this Lease and the exhibits incorporated herein or in the Premises or the Building.

## 24. OPTION TO RENEW

At the end of the Lease Term, provided Tenant is not then in default under the terms of this Lease. Tenant shall have the option to renew this Lease for *one ( 1 )* additional term of *Five (5) years* upon the same terms and conditions applicable to the primary Lease Term except the rental rate shall be adjusted to no more than 10% of the current rate, and Tenant must inform Landlord in writing on or before six (6) months prior to the renewal date of Tenant's intention to renew or cancel. During the first ninety (90) days of the six (6) months both parties shall agree in

writing to revisions to the rental rate  The request for revisions shall be based on changes in the economic and market conditions during the primary Lease Term.

## 25. RIGHT OF FIRST REFUSAL

A  Tenant shall have the right of first refusal to lease the additional office space on the second floor for the rate of $2.85 per square foot.  Landlord and Tenant agree to execute an Addendum to this Lease reflecting the additional square footage and increased rent within 30 days prior to Tenant's occupation of additional space

B  Tenant shall also have the first right of refusal to expand into approximately 20,000 square feet of warehouse space currently occupied by a month-to-month tenant  The rent for the additional space shall be $2.85 per square foot. Tenant agrees to give Landlord sixty (60) days written notice of its intent to lease additional warehouse space  Landlord and Tenant agree to execute an Addendum to this Lease reflecting the additional square footage and increased rent rate within 30 days prior to Tenant's occupation of additional space.

C. Should Landlord receive a bon fide offer ("Offer") that Landlord is willing to accept to lease the foregoing premises to a third party, tenant shall have the right to lease such premises upon the same terms and conditions as are set forth in this Lease  Landlord shall notify Tenant of the Offer in writing, and Tenant shall have fifteen (15) days to notify Landlord in writing of its election to amend this Lease to add such premises and include such premises within the scope of this Lease, of Landlord shall be free to accept the Offer and to lease such premises to the offeror or its successor

## 26. BROKERS

Trammell Crow Services, Inc  and Fortis Group, Inc  have represented the Tenant in this transaction. Stephen C  Gault Co  has represented the Landlord in this transaction.  Trammell Crow Services, Inc., Fortis Group, Inc  and Stephen C  Gault Co. shall be paid by the Landlord in accordance with a separate agreement
*IN WITNESS WHEREOF,* Landlord and Tenant have executed three originals hereof on the date, signed and notarized on the following page.

LANDLORD: *Beneke Wire Company*

BY: _____

PRINT NAME: ___STEPHAN C. BENEKE___

DATE: _____7-23-04_____

ST ... AND
TO ... CT

2005 OCT 19  P 5: 46

FILED

**TENANT:** *Decker College*

BY: _____

PRINT NAME: _Gerald M Woodcox_____

DATE: ___7-28-04_____

JEFFERSON CIR/DIST CT
2005 OCT 19 P 5:46

FILED

*EXHIBIT A*
**Legal Description**

**EXHIBIT B**

Tenant's Premises located within the Building

**EXHIBIT C**
Description of Landlord's work and Tenant's work

EXHIBIT C.

1. **General**.

Within thirty (30) days after the date of this Lease, Tenant shall prepare plans and specifications of improvements to be reviewed and approved in writing by Landlord prior to construction. Landlord shall have five (5) business days to review and approve said plans. If Landlord fails to respond to Tenant by the end of five (5) business days, it is assumed Landlord has accepted Tenant's plans for improvements.

2. **Landlord's Work - Basic Building**. Landlord will construct at its expense a basic building which shall include the following:

   a  All exterior wall construction of the building and the roof to be in good repair and free of leaks;

   b.  All utilities in good working order including but not limited to water, electrical, natural gas and sanitary sewer systems.

   c  The premises must meet all local, county and state codes; however, Tenant does acknowledge the premises "as is" are not ADA and code compliant and shall use a portion of Landlord's contribution to remedy same.

3. **Leased Premises - Work by Landlord**. In addition to the basic building, Landlord shall provide, furnish and install the following improvements, at its expense:

   a  All systems including mechanical, sprinkler, electrical, plumbing and HVAC shall be in good working order prior to Lease Commencement;

   b.  Landlord shall provide a one (1) year warranty on all HVAC systems;

   c  All doors to be fully operational;

   d.  Dock bumpers, existing levelers and canopies to be in good repair;

   e.  Electrical transformers in office area to be repaired or replaced so they do not emit foul odor

4. **Leased Premises - Work Done by Tenant at Tenant's Expense**

   a.  Except as set forth in paragraphs 2, 3 of this Exhibit C, Tenant shall provide, furnish and install all remaining, if any, architectural, electrical, mechanical and plumbing, and or cosmetic work, at Tenant's expense, necessary to complete the construction of the Premises in accordance with the approved plans and specifications submitted and approved by Landlord subject to paragraph 1.

   b  Tenant will start work within ten (10) days after being notified by Landlord that the Premises are substantially complete and ready for Tenant to perform Tenant's work, and continue same expeditiously until completion.

c    Tenant shall be responsible for the installation and expense for any telephone system, computer system, security and fire alarm systems and any other improvements deemed necessary.

d.    At the completion of this work the Tenant shall provide lien affidavit releases as reasonably required by Landlord

e    All such work shall be done in conformity with a valid building permit when required, a copy of which shall be furnished to Landlord before the work is commenced.  Any work not acceptable to the local Building Code Enforcement Office, or not reasonably satisfactory to Landlord, shall be promptly replaced at Tenant's expense Notwithstanding any failure by Landlord to object to any such work, Landlord shall have no responsibility therefore    Tenant shall provide Landlord with a copy of the Certificate of Occupancy upon final inspection

f.    Tenant shall reimburse Landlord for any reasonable expense incurred by Landlord by reason of faulty work done by Tenant or his Contractors, or by reason of delays caused by such work, or by reason of inadequate cleanup

g.    Tenant's contractors to carry liability insurance naming Landlord as an additional insured

5    **Allowance to Tenant**

In additional to Landlord's improvements agreed to in paragraphs 2 and 3, Landlord shall contribute $100,000 towards completion of Tenant's improvements to the premises  Such amount shall be paid upon completion of all work, provided that Landlord receives copies of all invoices and signed lien releases and waivers from all contractors, subcontractors, and materialmen.  Tenant Improvements shall be paid to Tenant within fifteen (15) days after invoices and lien waivers are submitted to Landlord

*Landlord; Beneke Wire Company*
By: _____
Date: _____7-23-04_____

*Tenant; Dacke College, Inc.*
By: _____
Date: _____7-23-04_____

*EXHIBIT D*
*Rules and Regulations*

GENERAL RULES

Lessee agrees that:

1   All deliveries or shipments of any kind to and from the Premises, including loading and unloading goods, shall be made to the rear of the Premises or at any other location designated by Landlord.  All related traffic will use the West driveway and not the East driveway (along the railroad tracks).

2   All garbage and refuse shall be stored in the rear lot, in covered container specified by Landlord and shall be placed at the location within the Premises designated by Landlord, for collection by contractors   Tenant shall store soiled or dirty linen in approved fire rating organization metal containers with self-closing fusible link covers.

3.  No aerial for radio, television, phonograph or other similar devices, shall be attached thereto (inside or outside the Premises) shall be installed without first obtaining in each instance the Landlord's prior written consent, and if such consent be given, no such device shall be used in a manner so as to be heard or seen outside of the Premises

4.  Tenant shall keep the area immediately adjoining the Premises and at the rear of the Premises clean and free from dirt and rubbish, and Tenant shall not place, suffer or permit any obstructions or merchandise in such areas.

5.  Tenant shall not use the common areas in the Building for business or promotional purposes.

6   Tenant and Tenant's employees shall park their cars only in those portions of the parking areas, if any, designated for that purpose by Landlord

7.  Plumbing, electrical and other facilities within or serving the Premises shall not be used for any purposes other than for which they were constructed, and no foreign substances of any kind shall be thrown therein

8.  Tenant shall employ, at Tenant's expense, a pest extermination contractor to service the Premises at such regular intervals as is customary for this type of property.

9   Tenant shall not burn trash or garbage in or about the Premises or the property

10. Tenant shall not place, suffer or permit displays, or decorations on the sidewalks in front of or at the rear of the Premises or on or upon any of the parking or other common areas of the property.

11  Tenant shall keep the Premises at all time at a temperature sufficiently high to prevent the freezing of water in pipes and fixtures

12. Tenant shall not use, permit or suffer the use of any portion of the Premises as living, sleeping or lodging quarters

13. Tenant agrees to install and keep serviced fire extinguishers and any other requirements that may be imposed by the fire department from time to time.

14    Tennant shall not use, unless in an emergency, the egress stairwell nearest the Landlord, East side. The related Tennant's doors on both the first and second floor will have alarm exit hardware and signage indicating the doors for "emergency use only/alarm will sound".

15. Tennant shall be responsible for their grounds keeping and own snow and ice removal as deemed necessary

16. Hazardous material storage, composition, or discharges shall not be allowed onto premises.

17. Material Safety Data sheets (MSDS) of quantities over 55 gallons or greater shall be supplied to Landlord

18  The West gate to be locked with Tennant's padlock through Landlord's padlock, thus allowing both parties access to open gate

19  The Tennant's traffic will enter and exit the West driveway via the West gate, and will not use the East driveway along the railroad tracks of 5540 National Turnpike

*Landlord: Beneke Wire Company*
**By:** _____
**Date:** ___7-23-04___

*Tenant: Decker College, Inc*
**By:** _____
**Date:** ___7-23-04___

WESTERN DISTRICT OF KENTUCKY
UNITED STATES DISTRICT COURT

2005 OCT 19  P 5: 47

FILED

## **EXHIBIT B**

(Amendment to Lease Agreement)

## *AMENDMENT TO LEASE AGREEMENT*

*THIS AMEDMENT DATED MARCH* __15th__ , *2005, IS AN AMENDMENT TO THE LEASE AGREEMENT ENTERED INTO ON JULY 23, 2004 ("original lease") by and between Beneke Wire Company ("LANDLORD")* 5540 National Turnpike, Louisville, KY 40214 *and Decker College, Inc. ("TENANT")* 5534 National Turnpike, Louisville, KY 40214. Landlord leases to Tenant and Tenant leases from Landlord upon the terms and conditions set forth in the original lease an additional Twenty Thousand (20,000) square feet of warehouse space in the premises designated as 5534 National Turnpike, Louisville, KY 40241 and outlined in red on Exhibit A. Landlord and Tenant hereby acknowledge Tenant took possession of said additional space in February 2005 prior to giving Landlord written notice as required in original lease. Failure to adhere to the terms and conditions of the notice provisions set forth in the original lease does not in any way nullify or void any terms or conditions of the original lease. Pursuant to Section 27 (B) of the original lease, the rental rate shall be Two Dollars and Eighty-Five Cents ($2.85) per square foot. Tenant hereby agrees to pay an additional Fifty Seven Thousand Dollars ($57,000) per year in monthly installments of Four Thousand Seven Hundred and Fifty Dollars ($4,750) beginning on April 1, 2005 and ending upon the termination of the term of the original lease.


LANDLORD: *Beneke Wire Company*

BY: _____

Stephen C. Beneke, *Assistant Vice President of Operations*


TENANT: ___Decker College, Inc.___

BY: ___William F. Weld___

PRINT NAME and TITLE: ___WILLIAM F. WELD, CEO___

STUART TERRY GUBBINS 13
JEFFERSON CIRCUIT CT

2005 OCT 19 P 5:47

FILED

## **EXHIBIT C**

(Lease Termination Letter)



**GREENEBAUM**
GREENEBAUM DOLL & McDONALD PLLC

**Andrew M. Fleischman**
Direct (502) 587-3735 Fax (502) 540-2265 E-mail amf@gdm.com

VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

September 12, 2005

Decker College, Inc.
Leo Bogard
5534 National Turnpike
Louisville, KY 40214

Re:    Lease Termination

Dear Sirs:

We represent Beneke Wire Company ("Landlord") in connection with the Lease dated July 23, 2004 ("Lease") by and between Landlord and Decker College, Inc. ("Tenant"). Because Tenant has not paid the required rent payments for August and September, Beneke has instructed us to send this notice of default and lease termination on its behalf.

Section 18.1 of the Lease provides as follows: *"If at any time Tenant shall fail to pay rents due under this Lease for ten (10) days after the due date thereof, . . . then Landlord shall have all such rights and remedies as are provided by law in respect to such default, including, at Landlord's election, the right to terminate this Lease; provided, however, that Tenant's obligation and liability to make good any damages and deficiencies from any reletting shall survive such termination of this Lease."* As a result of Tenant's nonpayment of rent, the Lease is hereby terminated, effective immediately, provided, that Landlord expressly reserves all rights and remedies under the Lease or otherwise provided by law.

Please be advised also that, effective immediately, Landlord will assume control over access to the leased premises and the locks will be changed. If Tenant or its employees need access, please contact Stephen Beneke to request entry. Entry will be arranged only to permit Tenant to clean up the premises or for other legitimate purposes. Landlord reserves all rights in connection with its lien (under KRS §383.070) on all of Tenant's property located at, or previously removed from, the premises. Tenant may not remove any property without Landlord's prior consent. Please contact Stephen Beneke or me if you wish to discuss this notice.

Sincerely,

*Andrew M. Fleischman* (signature)

Andrew M. Fleischman

cc:    Stephen C. Beneke
       Jeff Woodcox
       Mike Doughty



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
LEO BOGARD
Street,
or PO B
DECKER COLLEGE, INC.
City, St
5534 NATIONAL TURNPIKE
LOUISVILLE, KY 40214

PS For

See Reverse for Instructions

7001 2510 0002 3859 2081

## Certified Mail Provides:

- A mailing receipt
- A unique identifier for your mailpiece
- A signature upon delivery
- A record of delivery kept by the Postal Service for two years

*Important Reminders:*

- Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
- Certified Mail is *not* available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement *"Restricted Delivery"*.
- If a postmark on the Certified Mail receipt is desired, please present the arti-cle at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, January 2001 *(Reverse)*

102595-01-M-1049

## **EXHIBIT D**

(Eviction Petition)

AOC-056-1
Rev. 9-04

Commonwealth of Kentucky
Court of Justice
www.kycourts.net

FILED IN CLERK'S OFF.
JEFFERSON CIRCUIT C'i

2005 OCT 18 P 3 00

TONY MILLER, CLERK

**PETITION FOR & WRIT
OF FORCIBLE ENTRY & DETAINER**

Case No. OSC 16741T

Court _____ District

County _____ Jefferson

DOCKETED

OCT 24 2005 CSV

Greenbaum, Doll
& McDonald, PLLC

Decker College, Inc., a Kentucky Corporation          PLAINTIFF

Decker College, Inc., a Kentucky Corporation     COPY TO PA.
                                                                                DEFENDANT
5534 National Turnpike                          FBT LLC
                                                             400 W. Market St,
Louisville, Kentucky  40214                      32nd Floor
                                                             Louisville, KY 402

Plaintiff claims there is a   [X] written   [ ] oral lease between the parties and Defendant has breached
that lease agreement.  Defendant(s) have breached the lease by not paying rent for the
[X] months of _August, September and October_____  or
[ ] weeks of _____
in the amount(s) of $ _61,149.00_____, and have not paid late fee(s) for the
[X] months of _August, September and October_____  or
[ ] weeks of _____
in the amounts of $ _3,057.45____.  Defendant(s) have breached the lease / rental agreement because of the following:
_Failure to pay rents due under a Lease entered into between the aforementioned parties_
_on July 23, 2004, and Amendment to Lease Agreement dated March 15, 2005._

Plaintiff gave Defendant(s) notice to vacate in writing on __September 12____, _2005_ and Defendant(s)
have not vacated.

I hereby certify I am the   [ ] owner of   [X] attorney for the owner of the above-named property.
Signature _Melissa Norman Bork_____
Name (print) _Melissa Norman Bork, Esq._____
Address  _Greenebaum Doll & McDonald PLLC, 3500 National City Tower, 101 S. Fifth Street,_
_Louisville, Kentucky  40202_____

SUBSCRIBED AND SWORN TO BEFORE ME THIS _18TH_ day of _OCTOBER_____, _2005_
_MY COMMISSION EXPIRES: MARCH 18, 2006_  _____
                                                                              Deputy Clerk
                                                                              NOTARY PUBLIC

THE COMMONWEALTH OF KENTUCKY to the Sheriff (or Constable) of Jefferson County:
      WHEREAS Plaintiff has made complaint that on the _____ day of _____, _____, the
above-named Defendant did   [ ]  forcibly enter into   [ ]  forcibly detain from Plaintiff the following:
[ ]  Defendant's address which the Defendant, tenant of the Plaintiff, refuses to vacate.  You are therefore commanded
to summon the above-named Defendant to appear
on _11. 7____, _05_ at _9AM_, Courtroom # _307_,
Hall of Justice, 600 West Jefferson Street, to inquire into this   [ ]  forcible detainer   [ ]  forcible entry, giving
Defendant at least three (3) days' notice of trial, and to be present at trial with this writ.

      Witness my hand as Judge this _____ day of _____, _____

                                                                    _____
                                                                    District Judge, Jefferson County

**THIS IS AN EVICTION NOTICE:  You should Appear in Court to tell your side of the Dispute.**

**<u>EXHIBIT E</u>**

(Statement of Lien)

## STATEMENT OF LIEN FOR RENT
## PURSUANT TO KRS 383.070

Claimant:          Beneke Wire Company

Lien Against:      Certain Property of Decker College, Inc., located at
                   5534 National Turnpike, Louisville, Kentucky  40214

Lien Amount:       $64,206.45


Beneke Wire Company, a Kentucky corporation, having the address of 5540 National Turnpike, Louisville, Kentucky 40214, by and through its attorney and authorized agent, Stephen C. Beneke, for its Statement of Lien for Rent pursuant to KRS 380.070 *et seq.*, states as follows:

Claimant is the Landlord under a certain Lease Agreement dated July 23, 2004 and Amendment to Lease Agreement dated March 15, 2005, by which Decker College, Inc., a Kentucky corporation, having the address of 5534 National Turnpike, Louisville, Kentucky 40214 ("Tenant"), leased certain premises consisting of approximately 85,822 square feet of space located at 5534 National Turnpike, Louisville, Kentucky  40214.

By letter dated September 12, 2005, Claimant, pursuant to the terms of the Lease, provided written notice to Tenant concerning termination of the subject Lease.

Pursuant to KRS 383.070 and .080, notice is given that the Claimant asserts a lien on the fixtures, furniture, and other personal property of the Tenant, from the time possession was taken under the Lease, to secure Claimant in the payment of up to four (4) months rent, due or to become due.  The monthly rental rate at the time of termination was $20,383.00

_____
Stephen C. Beneke

STATE OF KENTUCKY          )
                           )SS:
COUNTY OF JEFFERSON        )

Subscribed and sworn to before me by Stephen C. Beneke, attorney and authorized agent for and on behalf of Beneke Wire Company, this 18th day of October, 2005.

My commission expires: 12/15/2008

_____
NOTARY PUBLIC

Prepared by:

Melissa Norman Bork
Kurt A. Scharfenberger
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky  40202-3197
(502) 589-4200 - telephone
(502) 587-3695 - facsimile

1035570_1

JOHN TELLERMAN, KTE
JEFFERSON CIRCUIT CT

2005 OCT 19  PD 5:47

FILED

## **EXHIBIT F**

(Complaint)

NO. _____  **05 C I 09147**

JEFFERSON CIRCUIT COURT
DIVISION _____

BENEKE WIRE COMPANY

PLAINTIFF

v.

### VERIFIED COMPLAINT

DECKER, INC. D/B/A
DECKER COLLEGE, INC.
981 South Third Street
Louisville, Kentucky 40203

JEFFERSON CIRCUIT COURT DEFENDANT
DIVISION THREE (3)

      Serve: FBT LLC, Registered Agent
            400 West Market Street, 32nd Floor
            Louisville, Kentucky 40202

\* \* \* \* \* \*

Plaintiff Beneke Wire Company ("Beneke"), by counsel, for its Complaint herein states as follows:

### PARTIES

1.    Beneke is a Kentucky corporation with its principal place of business located at 5540 National Turnpike, Louisville, Kentucky 40214.

2.    Defendant Decker College, Inc. ("Decker") is a Kentucky corporation with its principal place of business located at 981 South Third Street, Louisville, Kentucky 40203.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to KRS 23A.010 in that the amount in controversy exceeds the jurisdictional prerequisite of this Court.

4.    Venue is appropriate in that all facts giving rise to these claims occurred in Louisville, Jefferson County, Kentucky. Furthermore, the personal property subject to this litigation is located in Louisville, Jefferson County, Kentucky.

2005 OCT 19 P 5 :46

JEFFERSON CIR/DIST CT

FILED

## FACTS GIVING RISE TO THE CLAIMS

5.      Beneke restates and incorporates herein by reference each and every allegation set forth in numerical paragraphs 1 through 4 above, as fully set forth herein.

6.      On or about July 23, 2004, Decker entered into a Lease Agreement ("Lease") with Beneke to lease certain premises consisting of 65,822 square feet of space located at 5534 National Turnpike, Louisville, Kentucky 40214. A copy of the Lease is attached hereto as Exhibit A and incorporated herein by reference.

7.      The Lease provides, in part, that Decker was to pay $15,633.00 per month to Beneke on the first day of each calendar month. The term of the Lease was 60 months and commenced on October 1, 2004. Ex. A, Lease ¶ 3.

8.      On or about March 15, 2005, Decker and Beneke agreed to an Amendment to the Lease Agreement ("Amendment") to lease an additional 20,000 square feet of space, also located at 5534 National Turnpike, Louisville, Kentucky 40241. The Amendment is attached hereto as Exhibit B and incorporated herein by reference.

9.      The Amendment provides, in part, that Decker was to pay $4,750.00 to Beneke in additional rent. The additional rent was due on the first day of each calendar month beginning on April 1, 2005, and continued until termination of the original lease.

10.     Decker has failed to make proper payment pursuant to the Lease and Amendment for the months of August, September, and October of 2005. Decker is in default of the Lease and Amendment which constitutes a breach of the two agreements.

## COUNT I

### BREACH OF CONTRACT

11.     Beneke restates and incorporates herein by reference each and every allegation set forth in numerical paragraphs 1 through 10 above, as fully set forth herein.

2

12.    Decker has failed to make rent payments provided for under the Lease and Amendment. The breach of the Lease and Amendment constitutes an event of default. Upon such an occurrence, any and all liabilities of Decker become immediately due and are now due and payable. Ex. A, Lease ¶ 18.

13.    Beneke gave written notice of the default to Decker on September 12, 2005. A copy of the default letter to Decker is attached hereto as Exhibit C.

14.    The conduct of Decker as set forth above constitutes a breach of the Lease and Amendment.

15.    By reason of Decker's breach, Beneke has suffered damages in an amount to be determined by the evidence presented at trial and that exceeds the jurisdictional limit of this Court.

## COUNT II

### ENFORCEMENT OF LIEN

16.    Beneke restates and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 15, above, as fully set forth herein.

17.    On October 18, 2005, Beneke recorded a Statement of Lien For Rent ("Lien") with the County Clerk for Jefferson County, Kentucky pursuant to KRS 383.070, *et seq.* The Lien is recorded in Miscellaneous Lien Book 133, page 696. A copy of the Lien is attached hereto as Exhibit D.

18.    On October 18, 2005, Beneke sent to Decker via certified mail, return receipt requested, a copy of the Lien.

19.    Pursuant to KRS 383.070, *et seq.*, Beneke has a valid lien on the fixtures, furniture, and other personal property ("the Property") of Decker.

20.    Beneke's lien claim currently totals $64,206.45

3

21.     Beneke is further entitled to have any judgment received satisfied by the sale of the Property.

WHEREFORE, Plaintiff Beneke demands as follows:

A.      For judgment against Decker in an amount that exceeds the jurisdictional limit of this Court and to be determined at trial;

B.      That Beneke be adjudged to have a valid Lien For Rent, pursuant to KRS 383.070, *et seq.*, the priority of which is to be determined by this court with respect to all other liens and encumbrances.

C.      That Beneke be allowed to enforce the Lien For Rent by sale of the Property in satisfaction of said judgment with waiver by Decker of any and all equitable statutory rights and redemptions.

D.      For a trial by jury on all issues so triable;

E.      For its costs herein expended, including reasonable attorney fees; and

F.      For any and other relief for which it may appear entitled.

Respectfully submitted,

Melissa Norman Bork
Kurt A. Scharfenberger
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky  40202-3197
(502) 589-4200 - telephone
(502) 587-3695 - facsimile

COUNSEL FOR PLAINTIFF
BENEKE WIRE COMPANY

TONY LINDLEY, D. CLERK 13
JEFFERSON CIR/DIST.CT

2005 OCT 19 P 5: 46

FILED

**VERIFICATION**

Stephen C. Beneke declares as follows:

I am the *Asst. V-P Operations* of Beneke Wire Company, Plaintiff herein. I have read the foregoing Verified Complaint and know the contents thereof and the same are true of my own knowledge except as to such matters therein stated to be on information and belief, and as to these matters, I believe them to be true.

Executed on the ___*19*___ day of October, 2005.

BENEKE WIRE COMPANY

By: _*Stephen C Beneke*_
Stephen C. Beneke

Title: *Assistant Vice President – Operations*


**COMMONWEALTH OF KENTUCKY** )
)SS:
**COUNTY OF JEFFERSON** )

The foregoing instrument was acknowledged before me this *19th* day of October, 2005 by Stephen C. Beneke in his capacity as *Asst. V-P Operations* of Beneke Wire Company, for and on behalf on said company.

My commission expires: *April 26, 2006*

_____
NOTARY PUBLIC

1035744_1

TONYA FELTNER CLERK 13
JEFFERSON DIST/CIRCUIT CT

2005 OCT 19 P 5: 46

FILED