**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 05-61805-THF |
| DECKER COLLEGE INC., ) | Chapter 7 |
| Debtor ) | |
| ) | |

## DECKER COLLEGE STATUS REPORT

Comes now ROBERT W. KEATS, Trustee of the Estate of Decker College ("Decker"), and provides this status report concerning significant activities of the Trustee between the May 15, 2017 status hearing and the Status Hearing set for August 22, 2017.

### Settlement of COE Adversary Proceeding

Decker resolved the Adversary Proceeding against COE following mediation. The Trustee agreed to settle Decker's claims in exchange for a payment of $2 million. On March 31, 2017, Decker submitted a motion for approval of the settlement agreement in the Adversary Proceeding No 09-3091. (A.P. Dkt. #284) Because there were objections to the Settlement the Trustee withdraw the original Settlement Motion (Dkt. #298) and refiled the Motion to Approve the Settlement Agreement (Dkt. #301) believing the terms of the revised settlement agreement were satisfied. A hearing was conducted on June 22nd at which time the Court directed Mr. Coffman to prepare an order consistent with the Court's directives following the hearing. That Order was granted by the Court (Dkt. #315). However, following the Court's granting of the Order (Dkt. #315) the United States of America filed a motion to Vacate, Alter and Amend. (Dkt. # 316).

Believing the concerns having been resolved between the Trustee and the United States of America, the Trustee is prepared to file a revised Order at the time of the hearing set on this

matter for August 22, 2017.

## Motion for an Order Directing the Trustee to Seek
## Immediate Turnover of Estate Funds Held by the Department of Education

A motion demanding the Trustee seek the turnover of funds held by the Department of Education was filed by Decker College shareholders (Dkt. #610). The Motion was opposed by both the Trustee (Dkt. #614) and by the U.S. Department of Education (Dkt. #615).

Over the past 12 years the Trustee has actively sought and demanded $11.5 million dollars of Department of Education Federal Student Aid ("FSA") reimbursement funds that Decker had cause to believe had been reviewed and approved before the school was forced into bankruptcy. The Trustee has spent nearly 12 years in the Bankruptcy Court, the Federal District Court, the 6th Circuit Court of Appeals, and then back to the original FSA administrative appeal the Trustee filed in 2006 in which the Administrative Judge finally determined that the letter from COE to FSA stating that Decker was not accredited was false, and "[i}f that letter is false, the FSA has no remaining basis for imposition of liability." (AJ Decision, pp.2-4, 5). The finding of the AJ in that administrative proceeding was the same found by Judge Fulton in his Findings of Fact. (Dkt. #198). Unfortunately, FSA continued to assert that the dispute between Decker and COE is still not final, and thus, the Office of Federal Student Aid appealed the AJ Decision to the Secretary of Education.

The Secretary of Education upon review of the AJ Decision finally put an end to the constant delays in the Trustee's FSA appeal and found that COE had actually accredited Decker's distance education programs and then erroneously informed FSA that the programs were unaccredited. The Secretary's Decision was the turning point that enabled the Trustee to revive his twelve year demands for the turnover of the FSA funds.

These efforts over a twelve year period are examples of the Trustee's efforts to seek the turnover of the reimbursement funds due Decker. It was not until the Secretary's Decision in November 2016, that the Trustee was finally given the opportunity to assert renewed demands for turnover of the funds.

In his most recent demand, and following the Department of Education's renewed denial, the Trustee was delighted to learn that the Department was now willing to meet and provide "further evidence and explanation" which the Department believes will assist the Trustee in understanding the declination. This opportunity will enable the Trustee to conduct meaningful discussions with the Department concerning the original $11.5 million dollar reimbursement request, and other requests not yet submitted. The Trustee looks forward to such meetings and opportunities to negotiate a resolution to this litigation.

The Trustee respectfully requests the Court to deny the motion of Decker College for an order directing the Trustee to seek immediate turnover of estate funds held by the Department of Education.

## Motion to Convert the Decker case from Chapter 7 to Chapter 11.

On August 2, 2016 the Decker College shareholders filed a motion to convert the Decker College Chapter 7 bankruptcy case to Chapter 11. (Dkt. #550). That motion was withdrawn on August 22, 2016. (Dkt. #562). One year later, on August 3, 2017 the Decker College shareholders have again filed a Motion to Convert the Decker College Chapter 7 bankruptcy case to Chapter 11. (Dkt. #636). The Trustee expects to file his objections to the motion within the next few days demonstrating to the Court that such conversion will not be beneficial to the 641 creditors of Decker College. A hearing is already scheduled to occur on September 5, 2017 although the Trustee may seek to postpone that date.

**Anticipated Next Steps In The Main Bankruptcy Proceeding**

As noted in Trustee's Opposition to Decker College Inc.'s Motion to Compel Trustee to seek Turnover of Estate Funds Held by the Department of Education (Dkt. No. 614), the Trustee is continuing his plan to seek the funds that it believes the Department owes Decker. With the consent of the Court the Trustee proposes to use a portion of the COE Settlement funds to support the costs necessary to pursue Decker's previously submitted reimbursement claims and claims that had not yet been submitted at the time the bankruptcy case was filed.

### 1.   Previously Submitted Reimbursement Claims

On June 13, 2005, the Department of Education (the "Department)" placed Decker College on the Heightened Cash Monitoring – 2 ("HCM-2") method of payment. The HCM-2 method permitted Decker to obligate federal student aid funds for eligible students enrolled in eligible programs under Title IV of the Higher Education Act, and then to submit reimbursement requests to the Department along with supporting documentation. In compliance with HCM-2 procedures, Decker submitted requests for a total of $11,543,810.57. Specifically, on August 10, 2005, Decker submitted a request for reimbursement of $5,072,927.54, along with a certification from Decker College's CEO William F. Weld and seven boxes of supporting documentation. And on September 8, 2005, Decker submitted a second request for reimbursement of $6,470,883.03, along with a certification from the College's Acting CEO Mark D. Stein and approximately eleven boxes of supporting documentation.

On March 31, 2006, the Department notified Decker of its decision not to process its outstanding HCM-2 requests. The Department raised no objection to $512,623.00 of Decker's reimbursement requests, finding that those funds were attributable to students enrolled in eligible educational programs. The Department also notified Decker that it was disallowing

4

$11,031,188.00 of the outstanding requests for the *sole reason* that they sought reimbursement for students enrolled in the distance education programs, which the Department considered to be ineligible under Title IV based solely on COE's now discredited statements that those programs were not accredited. Consequently, the Department declined to reimburse Decker at that time because of offsets it believed that Decker owed the Department, based almost entirely on the then-pending alleged liability of $31 million related to the COE issue which has since been overturned. No other basis for refusing to approve the amount of the request was provided by the Department.

The Trustee has been in discussions with the Department through counsel and has been assured that the Department is in the process of returning the records (18 boxes) submitted to support the $11,543,810.57 original reimbursement requests submitted in compliance with HCM-2 procedures. Once received, the Trustee will be in a position to employ an accounting firm to perform the necessary reviews of these Decker student records, if necessary, in order to complete any remaining steps to obtain payment from the Department. In order to economically conduct the review of over two million documents necessary for the accounting firm to accomplish their task, the Trustee anticipates that he will file an application to employ a file management company to scan the student records. The Trustee believes he will be able to finalize agreements with the various service providers within the next few weeks.

## 2.  Submission of Additional Reimbursement Requests

As previously explained to the Court and to the Department, Decker is also preparing to submit additional HCM-2 reimbursement requests to the Department that the Department owes Decker from 2005. Decker has been unable to submit these requests previously because Decker did not have (and still does not have) the funds necessary to hire professionals to comb through

the more than 900 boxes of records containing the documentation of the individual transactions necessary to support the reimbursement requests. The boxes contain records seized by government agents at the time Decker entered bankruptcy, which later were returned to the Estate and need to be re-organized and put in useful form for use by the experts.

As Decker has discussed with the Department, once this Court approves the settlement with COE and Decker receives the settlement payment, Decker intends to use some of the settlement proceeds to fund the accounting and preparation of these additional reimbursement requests. Decker will submit a motion to this Court to approve the hiring of experts and the payment of expenses necessary for the experts to perform their work, including workspace and the means to process the records. The Court's approval of such expenditure by the Estate necessarily will be subject to approval of the COE settlement and Decker's receipt of the settlement payment. Approval of Decker's forthcoming motions to approve the COE settlement and to approve the hiring accounting firms and file management companies will permit review of the records to begin immediately upon Decker's receipt of the settlement proceeds.

The Trustee believes he is also now in a position to address the submission of additional reimbursement requests and to file an application to employ an accounting firm to perform the necessary audits and file reviews of the Decker student records in order to complete the necessary steps to seek the submission of additional claim. In addition, in order to economically conduct the review of over two million documents necessary for the accounting firm to accomplish their task, the Trustee anticipates that he will file an application to employ a file management company to scan the student records. The Trustee believes he will be able to finalize agreements with the various service providers within the next few weeks.

## Conclusion

Decker has been pursuing its rights for twelve years, and has developed a plan to pursue its reimbursement requests and bring assets into the Estate and bring this bankruptcy proceeding to resolution. Trustee and counsel will be prepared to discuss this plan in further detail at the August 22, 2017 status hearing.

Respectfully submitted,

*/s/ Robert W. Keats*
Robert W. Keats, Trustee
P.O. Box 221377
Louisville, Kentucky 40252-1377
(502) 587-8787

## CERTIFICATE OF SERVICE

I certify the foregoing documents were served in conformity with CM/ECF Rule 6.9, or, by delivering a true copy to the following list of creditors listed on the Court Matrix via first class mail to the service list on August 21, 2017.

/s/ *Robert W. Keats*
Robert W. Keats